JS-6; O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV12-1284-AHM<br>Bk. Case No. 1:11-BK-10426-VK | Date | January 17, 2013 |
|---|---|---|---|
| Title | In re MARCIANO | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys NOT Present for Plaintiffs: | Attorneys NOT Present for Defendants: | |

**Proceedings:**   IN CHAMBERS (No Proceedings Held)

Appellant-Debtor Georges Marciano appeals from orders of the bankruptcy court holding him in contempt and issuing a bench warrant for his arrest.[1] Because Marciano has not shown that the bankruptcy court committed clear error or an abuse of discretion, the orders are AFFIRMED.

I.   FACTUAL BACKGROUND

On November 14, 2011, the bankruptcy court issued an order to show cause ("the OSC") why Marciano should not be held in contempt. E.R. 177. The order noted that, nearly a year after the bankruptcy court had entered an Order of Relief subjecting him to bankruptcy court jurisdiction, Marciano had failed to fulfill his legal obligations as a debtor including, *inter alia*, filing the required schedules of assets and liabilities and failing to turn over property of the estate to Chapter 11 Trustee David K. Gottlieb ("Trustee").

On November 23, 2011, Marciano filed schedules ("the November Schedules") that listed among his assets certain valuable watches and numerous automobiles.[2] E.R. 271. In a responsive filing, the Trustee argued that the November Schedules, which listed

---

[1] Dkt. 24.

[2] As discussed below, the November Schedules claimed that many of the listed automobiles had been transferred after the commencement of the bankruptcy proceedings.

JS-6; O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-1284-AHM<br>Bk. Case No. 1:11-BK-10426-VK | Date | January 17, 2013 |
|---|---|---|---|
| Title | In re MARCIANO | | |

just over $2.3 million in assets with many assets designated as "unknown" value, were incomplete and inadequate. E.R. 410. The Trustee attached a 2008 ledger that showed that the Georges Marciano Trust had a "book value" of over $360 million, as well as a declaration filed in state court by Marciano's accountant disclosing a net worth of at least $170 million. E.R. 412, 433, 454.

For his part, Marciano blamed the schedules' defects on the Trustee, for actions he had taken in Canada. Marciano has resided in Montreal, Canada, since the outset of bankruptcy proceedings. On September 15, 2011, the Trustee's representatives obtained a warrant from the Superior Court of Quebec to seize Marciano's assets in Montreal. Among the assets seized were a collection of expensive watches, a large gemstone known as the Chloe Diamond, and stock certificates and other legal documents showing ownership of various entities. Marciano claimed that this seizure made it impossible for him to accurately inventory his assets. The Quebec court subsequently quashed the warrants and the property was returned to Marciano.[3] The parties have not made clear when, precisely, Marciano's property was returned. According to the Trustee, Marciano had access to most of the seized documents by mid-October 2011. Appellee Br. (Dkt. 25) at 9. Marciano acknowledges that all of his property was returned by the end of December, 2011. Appellant Br. (Dkt. 24) at 15.

On December 5, 2011, the bankruptcy court issued an order finding Marciano in civil contempt ("the Contempt Order"). E.R. 656. In that order, the bankruptcy court ruled that the November Schedules were deficient and did not substantially comply with the Bankruptcy Code. The court ruled that Marciano could purge his contempt by, *inter alia*, refiling complete and accurate schedules and turning over estate assets to the Trustee and allowing inspection of assets claimed as exempt.

On December 31, 2011, Marciano filed new schedules of assets and liabilities ("the December Schedules"). E.R. 884. In the December Schedules, Marciano claimed that many of the valuable assets listed as property of the estate in the November Schedules, including the watch collection, were not, in fact, his property.

---

[3] Litigation in Quebec over the propriety of the seizure is ongoing.

**JS-6**; O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-1284-AHM<br>Bk. Case No. 1:11-BK-10426-VK | Date | January 17, 2013 |
|---|---|---|---|
| Title | In re MARCIANO | | |

After a hearing at which Marciano's attorney was present, the bankruptcy court issued a bench warrant for Marciano's arrest on January 13, 2012. E.R. 1187. The bankruptcy court concluded that Marciano had failed to comply with the court's orders by failing to turn over the following assets: (1) the watch collection listed in the November Schedules; (2) the stock certificates and other evidence of ownership of the assets listed in the November Schedules; (3) the vehicles listed in the November Schedules; and (4) the Chloe Diamond. The order also faulted Marciano for failing to allow inspection of assets that he had claimed as exempt on the November and December Schedules. The court further ruled that Marciano could purge his contempt by turning over the four identified assets and allowing inspection of the assets claimed as exempt. It is that order which is the subject of this appeal.

## II. LEGAL STANDARDS

An order of the bankruptcy court imposing sanctions for civil contempt is a final appealable order. *In re Stasz*, 387 B.R. 271, 274 (9th Cir. BAP 2008); *see also SEC v. Hickey*, 322 F.3d 1123, 1127 (9th Cir. 2003) ("A civil contempt order is ordinarily not appealable until the district court has adjudicated the contempt motion and applied sanctions."). A lower court's award of sanctions is reviewed for abuse of discretion, and its factual findings made in conjunction with that order are reviewed for clear error. *Affordable Media*, 179 F.3d at 1239. A court's finding that compliance was not impossible is a factual finding that is reviewed for clear error. *Affordable Media*, 179 F.3d at 1239.

Civil contempt is "a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n, Inc. v. McCord*, 453 F.3d 1126, 1130 (9th Cir. 2006). Whereas criminal contempt is imposed as punishment for a "completed act of disobedience," civil contempt sanctions are imposed as a means of forcing compliance with a court order. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (quotation omitted). Because of the coercive, rather than punitive, nature of civil contempt, a civil contemnor has the ability to "purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." *Id.* (quotation omitted).

A party is excused from complying with a court order if compliance is impossible;

**JS-6**; O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-1284-AHM
Bk. Case No. 1:11-BK-10426-VK | Date | January 17, 2013 |
|---|---|---|---|
| Title | In re MARCIANO | | |

in other words, impossibility is a defense to civil contempt. *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999). The party moving for contempt sanctions bears the burden of proving that his adversary violated a court order by clear and convincing evidence. *Id.* The burden then shifts to the contemnor to prove that compliance was impossible. *Id.* A court's finding that compliance was not impossible is a factual finding that is reviewed for clear error. *Id.*

The facts of *Affordable Media* make it particularly relevant to this appeal. In that case, two defendants had been held in contempt for failure to repatriate assets held by a foreign asset protection trust that they had created. The defendants argued that compliance was impossible because the law governing the trust did not allow for repatriation. The Ninth Circuit rejected this argument, noting that the defendants' "inability to comply with the district court's repatration order is the intended result of their own conduct." *Id.* at 1239. The Circuit expressed doubt that impossibility could ever be a valid defense where the claimed impossibility resulted from the contemnor's efforts to hide assets in a foreign trust. The Court further instructed that a contemnor faces an "especially high" burden of proving impossibility in this context, and that courts should be "especially chary" of such claims. *Id.* at 1241.

## III.  DISCUSSION

This court has jurisdiction to review a bankruptcy court contempt order only if it results in a sanction. *See Stasz*, 387 B.R. at 274; *see also Hickey*, 322 F.3d at 1127. As such, this Court's review is limited to the bankruptcy court's January 13, 2012 order issuing a warrant for Marciano's arrest. However, the Court need not ignore the case's lengthy procedural history. The bankruptcy court had substantial experience with the litigants at the time it issued the warrant, and the court was certainly entitled to take that history into account in deciding whether to credit each party's arguments and whether the significant sanction of arrest was warranted. Thus, it is appropriate to highlight some of that history here.

The bankruptcy court first ordered Marciano to file schedules of assets and liabilities in July 2011. In response, Marciano filed blank, unsigned schedules. *See* CV 11-9120-AHM (Dkt. 30). Shortly thereafter, the Trustee sought to use funds from an IRA account in Marciano's name. Marciano responded by refiling the schedules to list a

**JS-6**; O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-1284-AHM<br>Bk. Case No. 1:11-BK-10426-VK | Date | January 17, 2013 |
|---|---|---|---|
| Title | In re MARCIANO | | |

single asset–the IRA account, claimed as exempt. The bankruptcy court ruled that the account was property of the estate and that Marciano's claim of exemption was made in bad faith, a ruling this Court affirmed. *See id.* Marciano also failed to attend three scheduled debtor's examinations in February, July, and September 2011. E.R. 2. When the bankruptcy court again ordered Marciano to appear, in a November 14, 2011 OSC, Marciano responded by asserting that he could not appear because back problems made it medically inadvisable for him to fly on commercial aircraft. E.R. 344. In fact, Marciano had traveled to Los Angeles in late September and early October 2011, but he did not notify the bankruptcy court or the Trustee of his visit. *See* E.R. 400; 650. As Marciano points out, however, his failure to attend a debtor's examination was not the basis for the January 13, 2012 arrest warrant. Moreover, the arrest warrant was imposed for failure to turn over particular assets, not as a punishment for past litigation conduct. Nonetheless, this background provides critical context in reviewing Marciano's claims of impossibility.[4]

The arrest warrant order faulted Marciano for failing to turn over four categories of assets–the watch collection, the vehicles, the stock certificates, and the Chloe Diamond–as well as for failure to turn over the assets he claimed as exempt. On appeal, Marciano argues that it was impossible for him to turn over these assets. The Court concludes that Marciano has not shown that the bankruptcy court committed clear error in rejecting his claims of impossibility.

A. The Watch Collection

Marciano's appellate briefs leave the watch collection largely unaddressed. In a submission to the bankruptcy court dated January 6, 2012, however, Marciano contended that the watch collection was not his property, making it impossible for him to turn it over.

---

[4] Indeed, the bankruptcy court specifically referenced this history at the arrest warrant hearing. E.R. 1259 (COURT: "There's no speculation of this Court that he filed blank schedules, that he filed a blank statement, blank, completely. There's no speculation that it wasn't until the Trustee wanted to use the money in the Wells Fargo account to pay a retainer to Canada counsel that all the sudden Mr. Marciano filed a partial schedule C claiming it as exempt. This is not speculation. This is what the court knows from having handled this case for two years.")

**JS-6**; O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-1284-AHM<br>Bk. Case No. 1:11-BK-10426-VK | Date | January 17, 2013 |
|---|---|---|---|
| Title | In re MARCIANO | | |

The watch collection was among the assets that were seized in Montreal on September 15, 2011. Marciano's November Schedules had the following entry in the schedule for "Personal Property":

> Numerous watches and cufflinks (exact number unknown)
> Location: Formerly in debtor's possession at 262 St. Jacques West, Montreal, Quebec; most seized by Pricewaterhousecoopers [the Trustee's receiver] on 9/15/2011; current location unknown.

E.R. 283. In the December Schedules, Marciano acknowledged that the watch collection had been returned to him but claimed that they were not his personal property. The entry in the December Schedules stated that "[o]f the watches seized by [the receiver], the Debtor did not own them himself or through the Georges Marciano Trust as of [the date the petition was filed] or thereafter. He merely had possession of them before they were seized and now has possession of them again. As such, he does not value them as an asset of the estate." E.R. 976.

Before the bankruptcy court, Marciano explained this discrepancy by saying that he "was able to verify that he did not own them" after the collection was returned. E.R. 1132. Marciano also asserted that the November Schedules–which listed "numerous watches and cufflinks" under the heading "Personal Property"–"did not state that they all belonged to [him]." E.R. 1132. For his part, the Trustee objected to the changing story and noted that a valuation firm hired by the now-revoked Georges Marciano Trust appraised the watch collection in May 2009 for insurance purposes. E.R. 1087, 1099 (Declaration of Dean Fulghom, President and Principal of Asset Verification Inc.).

Given these facts, the Court concludes that the bankruptcy court did not clearly err in rejecting Marciano's contention that it was impossible to turn over the watch collection. Marciano's admission in the November Schedules that the watch collection was his personal property, together with the evidence that the collection was appraised by the Georges Marciano Trust and the undisputed fact that the collection was in his possession, provides substantial evidence to support the bankruptcy court's conclusion that the collection was Marciano's personal property. The only evidence that the collection was not Marciano's property was his own statement in the December

**JS-6**; O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-1284-AHM<br>Bk. Case No. 1:11-BK-10426-VK | Date | January 17, 2013 |
|---|---|---|---|
| Title | In re MARCIANO | | |

Schedules that he was merely holding it for another unnamed entity. As such, the bankruptcy court did not clearly err in rejecting Marciano's contrary argument.

    B.    <u>Vehicles</u>

Despite the considerable discrepancies between the November and December Schedules, they contain identical lists of vehicles under the heading "Personal Property." Dozens of vehicles, ranging in value from $2,300 to $200,000, are listed and identified by a vehicle identification number. In the descriptions for almost all of the vehicles, Marciano attests in a parenthetical that the vehicle in question was "transferred post-petition." E.R. 289 (November Schedules); E.R. 988 (December Schedules). Most of the allegedly transferred vehicles are shown as located in Montreal, while some are listed as "location unknown." Only four entries on the list of vehicles do not include a parenthetical notation asserting post-petition transfer. One car is listed as a gift to Marciano's son and located in the son's possession in Los Angeles. The three other vehicles are listed as located in Beverly Hills.

At the arrest warrant hearing, the bankruptcy court expressed its disbelief at Marciano's assertion that he no longer owned most of the listed vehicles. The Court asserted that "[i]t believes he owns them" and that the assertions of post-petition transfer were a "fiction" fabricated to "avoid turnover." E.R. 1222-25. The bankruptcy court further noted that Marciano had not offered any evidence, such as title or insurance documents, that the vehicles were owned by another entity. E.R. 1244-45. The court also noted that Marciano had moved the cars to Montreal, a point that Marciano's counsel did not dispute. E.R. 1249 ("THE COURT: He took them all from California and took them to Canada post-petition. MR. McCARTHY: So? What's the point?").

The Court concludes that the Court did not err in rejecting Marciano's defense of impossibility regarding the allegedly transferred vehicles. That the vehicles are listed in the schedules as Marciano's "personal property" contradicts the assertion that the vehicles have been transferred, *i.e.*, are no longer Marciano's personal property. Given Marciano's consistently evasive conduct in the case, it was not clearly erroneous for the bankruptcy court to discredit Marciano's assertion that post-petition transfer made it impossible for him to turn over the vehicles. Moreover, the bankruptcy court's conclusion is bolstered by the fact that Marciano had admitted to taking many of the

**JS-6**; O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-1284-AHM<br>Bk. Case No. 1:11-BK-10426-VK | Date | January 17, 2013 |
|---|---|---|---|
| Title | In re MARCIANO | | |

vehicles to his current residence in Montreal.

Even if Marciano's assertions of post-petition transfer were to be believed, the bankruptcy court would have a substantial basis to find that these transfers were an attempt to avoid turnover–in other words, a "self-created" impossibility. As *Affordable Media* instructs, Marciano faces an "especially high" burden of proving impossibility in this context. 179 F.3d at 1241. As such, this Court concludes that the bankruptcy court did not clearly err in rejecting his defense.

As for the car located in Marciano's son's possession, this Court also concludes that turnover was not impossible. Although Marciano claimed that it was a gift, he nonetheless listed it on the November and December Schedules as his own personal property. Thus, it was not clear error for the bankruptcy court to conclude that Marciano could have turned over that vehicle.

As for the three vehicles located in Beverly Hills that the schedules claimed as personal property without qualification, Marciano does not assert that turnover was impossible. Rather, Marciano argues that he made efforts to turn these vehicles over to the Trustee. Evidence in the record shows that Marciano's counsel gave the Trustee less than twenty-four hours' notice to pick up the vehicles and stated that he would require the Trustee to have proof of insurance. E.R. 1173 (email from Marciano's counsel to Trustee's counsel dated January 4, 2012). The bankruptcy court noted that Marciano had no authority to impose such requirements on the Trustee and concluded that Marciano had not made a reasonable effort to turn over the vehicles. E.R. 1227-28. This Court concludes that this finding was not clearly erroneous.

    C.    Stock Certificates

As for the stock certificates, Marciano argues that turnover was impossible because they were returned to him only in late December 2011. He further contends that the documents were returned in a disorganized fashion. But even crediting Marciano's assertions, nearly two weeks elapsed between his receipt of his documents and the bankruptcy court's issuance of the bench warrant. Marciano's contention regarding the disorganized state of the documents on return fail to persuasively explain his inability to

**JS-6**; O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-1284-AHM
Bk. Case No. 1:11-BK-10426-VK | Date | January 17, 2013 |
|---|---|---|---|
| Title | In re MARCIANO | | |

turn over or otherwise deliver even one of the stock certificates during that period. Indeed, Marciano's failure to even partially comply with this order suggests that the real obstacle was unwillingness, not impossibility. Although this Court acknowledges his lawyer's assistance was affected by the ongoing, time-consuming motion practice in the bankruptcy court during this period, possibly making compliance more difficult, Marciano has not shown that it was clear error to conclude that it was not impossible for him to locate and turn over the stock certificates before the bench warrant was issued.

    D.    <u>The Chloe Diamond</u>

In the November Schedules, Marciano asserted that he had gifted the Chloe Diamond–valued at $16 million–to his daughter in November 2007. E.R. 323.[5] In the December Schedules, Marciano made the following claim regarding the diamond:

> [T]he diamond was purchased for Chloe Marciano and given to her as a gift to be transferred to her when she is married. Since before 10/27/2009 [the date the bankruptcy petition was filed], when the Debtor transferred legal ownership to [CKSM], the diamond has been owned by [CKSM], which in turn holds the diamond in trust for Chloe Maricano to be delivered to her when she is married.

E.R. 894. The November and December Schedules are contradictory. The November Schedules claim that Marciano's daughter has been the owner of the diamond since November 2007, while the December Schedules appear to claim that Marciano had ownership of the diamond until some point before October 27, 2009, at which point Marciano transferred it to CKSM to hold in trust.

In contrast to these contradictory assertions, the record contains persuasive evidence that the diamond has always remained property of the estate. Upon purchasing the gemstone in November 2007, Marciano recorded it as an asset of the now-revoked

---

[5] Unlike the other assets at issue in the arrest warrant, the November Schedules did not designate the Chloe Diamond as "personal property." Instead, the Chloe Diamond was mentioned only under a separate heading as a recent transfer of property.

**JS-6**; O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV12-1284-AHM<br>Bk. Case No. 1:11-BK-10426-VK | Date | January 17, 2013 |
|---|---|---|---|
| Title | In re MARCIANO | | |

Georges Marciano Trust.[6]  E.R. 586.  Moreover, like the watch collection, the Georges Marciano Trust had the diamond appraised by a valuation firm as of 2009 (for almost $24 million, about $8 million more than the value claimed in Marciano's schedules).  *Id.* at 1099-1100.  Moreover, the diamond was among Marciano's possessions that were seized in Montreal and later returned.  In fact, at the arrest warrant hearing Marciano's counsel acknowledged that the diamond was in Marciano's possession.  E.R. 1261 ("COURT: It's kept in his safe in his house. MR. McCARTHY: As a Trustee of CKSM.").   Based on these facts, and in the absence of any evidence of CKSM's ownership of the diamond other than Marciano's bare assertions, the Court concludes that Marciano has not shown that the bankruptcy court committed clear error in finding that he could have turned over the diamond.

E.    Exempt Assets

Marciano's papers leave almost completely unaddressed the bankruptcy court's finding that he did not comply with the order to allow inspection of the assets claimed as exempt in the November Schedules.  The exempt assets have relatively small values and were given scant attention in the submissions before the bankruptcy court.  Based on the record, it appears that some of those assets were located at a residence in Beverly Hills, while others were located in Canada. E.R. 1140-1. The record further reveals that on January 4, 2012, Marciano's attorney sent an email to the Trustee's attorney regarding inspection (the same email in which he gave the Trustee twenty-four hours' notice to pick up the three Beverly Hills vehicles if the Trustee showed proof of insurance). E.R. 1145. In that email, Marciano's attorney offered to make the Beverly Hills residence available for inspection the next morning. There is no evidence, however, that Marciano made the exempt assets in Canada available for inspection.  Based on this evidence, it was not clearly erroneous for the bankruptcy court to conclude that Marciano had not made reasonable efforts to allow inspection of the property claimed as exempt.

---

[6] The bankruptcy court previously determined that the Georges Marciano Trust and its assets were the property of the estate.  Based on that determination, the bankruptcy court authorized the bankruptcy Trustee to assume Marciano's power to revoke the trust.  *See In re Marciano*, CV 12-0545 (C.D. Cal. Nov. 13, 2012) (affirming the bankruptcy court's ruling).

JS-6; O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV12-1284-AHM<br>Bk. Case No. 1:11-BK-10426-VK | Date | January 17, 2013 |
|---|---|---|---|
| Title | In re MARCIANO | | |

F.   Other Arguments

Marciano makes several other arguments in objection to the arrest warrant. He asserts that the contempt proceedings violated his Due Process rights, but he does not back up this generalization with any support from case law or other authorities. Although the litigation in the bankruptcy court was moving very quickly, the bankruptcy court imposed the sanction of the arrest warrant only after Marciano's counsel had offered a written submission and delivered oral argument at a hearing. As such, the Court concludes that Marciano has not shown a violation of Due Process.

Marciano also half-heartedly argues that the bankruptcy court committed error by determining that certain assets, such as the Chloe Diamond, were property of the estate without conducting an adversary proceeding. Again, however, Marciano has not cited any authority holding that an adversary proceeding is required in these circumstances. Marciano also argues that the bankruptcy court should not have issued the bench warrant without first determining whether it would be enforced in Canada. But, again, he does not provide any support for the remarkable proposition that a contemnor can avoid the sanction of an arrest warrant if he flees to a jurisdiction where the warrant may not be enforced. Moreover, as the bankruptcy court pointed out, Marciano came to Los Angeles in 2011 and it is not unlikely that he will return. Accordingly, the Court rejects these contentions.

## IV.   CONCLUSION

The orders of the bankruptcy court are AFFIRMED. No hearing is necessary. Fed. R. Civ. P. 78; L.R. 7-15.

|  | : |
|---|---|
| Initials of Preparer | SMO |

cc: **Bankruptcy Court**

**JS-6**